In re Thomas A. SMITH, Debtor.

John R. CHRISTEN, Plaintiff,

v.

Thomas A. SMITH, Defendant.

Bankruptcy No. 86–3275–8B7.
Adv. No. 86–536.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 17, 1988.

John D. Emmanuel, Tampa, Fla., for plaintiff.

C. Kathryn Preston, Co–Atty., Tampa, Fla., Don M. Stichter, Tampa, Fla., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matters under consideration are two claims of non-dischargeability asserted by John R. Christen (Christen), the Plaintiff who instituted this adversary proceeding. The claim of non-dischargeability set forth in Count I of the amended Complaint is based on the factual allegation that the Defendant, Thomas A. Smith (Debtor), represented to the Plaintiff that he would obtain a release of a guaranty previously given by Christen to Manna Provisions, Inc. (Manna) who was a creditor of a corporation known as Brewmasters Steak House, Inc. (Brewmasters); that he never intended to obtain the release or, in the alternative, he knew that he would be incapable to obtain a release. It is further alleged in this count that the representations made by the Debtor were false and were made with the intent to deceive the

Plaintiff. In the conclusionary portion, it is alleged that as a result of the conduct of the Debtor, the Debtor "obtained money, property and/or extension of credit" by false pretenses, false representations or actual fraud.

In support of the claims set forth in Count II, it is alleged that when Manna filed a lawsuit against Christen, Brewmasters and the Debtor, the Debtor informed Christen that he had been released on his personal guaranty; that he was only a witness and not a party to the litigation and assured him that he did not have to worry about the litigation. It is further alleged by Christen that during the litigation the Debtor filed numerous pleadings on behalf of Christen, all without the knowledge or informed consent of Christen; that Christen had valid defenses to the lawsuit filed by Manna and also a potential cross-claim against the Debtor, all of which he was unable to raise because of the Debtor's action who acted as his attorney even though he had a conflict of interest. Based on the foregoing, it is contended by Christen that the amount paid to Manna by Christen in the amount of $225,000 by way of settlement of an adverse judgment entered against all the Defendants, including Christen, was a result of the Debtor's fraud or, in the alternative, result of defalcation by the Debtor while acting in a fiduciary capacity. The amended Complaint also contained a claim set forth in Count III in which the Plaintiff sought a declaration of non-dischargeability based on § 523(a)(6) but counsel for Christen announced at the commencement of the trial that Christen no longer intended to pursue this claim.

The facts established at the final evidentiary hearing in support of and in opposition to these claims can be summarized as follows:

At the time relevant to this transaction, Christen was the president and majority stockholder of Brewmasters, the owner and operator of a steakhouse initially located only in Tampa, Florida, which later branched out in other cities not only in Florida, but also outside of Florida, i.e.

Georgia. Manna was, almost from the inception, the exclusive supplier of meat and frozen products to all the restaurants which were operated either directly by Brewmasters, or by its several subsidiaries. The Debtor is a practising attorney. In addition, he also became the attorney for Brewmasters and its affiliates and was compensated on a monthly retainer basis and in early 1970 became a close personal friend of Christen and handled his personal affairs as an attorney. The fact of the matter is, he was the best man at Christen's wedding.

Brewmasters was initially founded in 1971 by Christen and sometime later, the date of which is unclear from this record, the Debtor acquired 42½% of the outstanding shares of stock in Brewmasters. Christen retained 42½% and H. Freed, an individual not involved in this litigation, the balance of 15%.

It appears that in the spring of 1982, the financial condition of Brewmasters and its affiliates deteriorated to such an extent that it became evident that it would be necessary to take some radical action to stabilize the financial affairs of the several corporations. Christen was about to depart for Switzerland and was anxious to resolve an apparent stalemate with the Debtor due to a disagreement as to the proper approach to be undertaken in order to solve the financial crisis of the corporations. Christen first offered to buy the Debtor's interest in the corporations, an offer the Debtor refused. Christen then proposed to sell his interest to the Debtor. This proposal was accepted by the Debtor. At the request of Christen, the Debtor prepared an agreement memorializing same by a document entitled "Memorandum of Agreement". The Agreement provided, inter alia, that the Debtor will acquire Christen's interest in "Brewmaster Restaurants" (sic) represented by corporate stock in the Brewmaster's Steakhouse, Inc., Countryside Restaurant, Inc. (parent and it's affiliate), Ormond Steakhouse, Inc., Prime Time, Inc. (parent including Food Service Dynamics, Inc.) and Maitland Steakhouse, Inc. (and it's affiliate), for an agreed purchase price of $250,000 cash or,

in the alternative, for $500,000 payable on time over a ten (10) year period which obligation to bear interest at the rate of twelve (12%) percent per annum, with interest payable monthly. The crucial part of the Agreement is set forth in the next to the last paragraph which, because of its importance, is set forth verbatim and reads as follows:

"Smith will release and hold harmless Christen from any obligation from Federal withholding taxes as well as any personal liability to Manna Provision."

It is without dispute that at the time of the execution of this document, Brewmasters were indebted to Manna on an open account in excess of $160,000, which obligation has been personally guaranteed by Christen. The record further reveals that after the execution of the "Memorandum of Agreement", Christen was no longer involved in the affairs of Brewmasters or its affiliates and the Debtor became the chief executive and in sole charge of the operation of the several restaurants. However, it is without dispute that upon having been served with the Complaint filed by Manna against the Debtor, Brewmasters, its affiliates and Christen, Christen immediately contacted the Debtor who assured him that he will represent him in the lawsuit filed in Duval County, Florida. Smith did in fact file an answer on behalf of all of the Defendants, including Christen, participated in discovery and when his request for jury trial was denied, elected not to put forth any evidence in support of the defenses of estoppel and novation set forth in the answer he filed on behalf of the Defendants. The trial was concluded and judgment was entered by the trial court in the amount of $419,108.29 in favor of Manna against all Defendants. Christen was aware of the entry of the judgment even though he did not appear at the trial and discussed this matter with the Debtor who informed him that he would appeal the judgment. Christen told him that he will settle this matter and urged the Debtor to join in the settlement and pay a portion of it. The Debtor declined. Christen did in fact settle the claim of Manna for $225,000 by a cash payment of $150,000 and the balance represented by a note to be paid in to Manna in two years.

It appears that the personal guaranty of Christen to Manna was discussed at the time of the execution of the Agreement and reference to same was included in the Agreement at the suggestion of the Debtor. It appears that it was understood both by the Debtor and Christen that the Debtor would obtain a release of Christen's guarantee from Manna. It is obvious, however, that it should have been evident to Christen that the Debtor was not in a position to guarantee to secure a release of Christen's guaranty from Manna. It also further appears, however, that Christen was not concerned about possible exposure on his personal guaranty due to the fact that he intended to leave the country with no intention to return. In fact, he stated to the Debtor that Manna can come and find him if it wanted to. It is without dispute that after the execution of the Agreement, Christen actually moved to Saint Barthelemy, an island in the French West Indies; that he offered for sale his home in Tampa and remained outside the country for at least four months but later returned and still resides in the United States.

It appears that after Christen sold his interest to the Debtor in Brewmasters and its affiliates, Manna resumed the business relationship with the restaurants operated by Brewmasters and its affiliates but insisted on the Debtor's personal guaranty as a condition to extend credit. Manna did in fact obtain the Debtor's guaranty in December, 1982 and resumed to sell to the restaurants on credit. Manna also requested and obtained a cross-collateralization agreement securing the debt of all the corporations operated by Brewmasters and its subsidiaries. There is no question and this Court is satisfied that Manna never agreed to release Christen on his personal guaranty and there is evidence in this record to indicate that if such release had in fact been insisted upon by the Debtor, Manna would not have agreed to sell on credit any merchandise to the restaurants operated by the corporations controlled by the Debtor. It is clear from the record that Christen

never himself requested the Debtor to pursue the matter of release and he never sought a release of his personal guaranty, in spite of the oblique reference to a release in the Memorandum of Agreement.

These are basically the operative facts established at the final evidentiary hearing, based on which Christen contends that he is entitled to a declaration of non-dischargeability of the sum of $225,000, a sum which he paid in part and obligated himself in part to pay Manna in settlement of the judgment obtained against him by Manna.

The exceptive provisions of the Code relied on by Christen are § 523(a)(2)(A) and § 523(a)(4). § 523(a)(2)(A) provides as follows:

**Sec. 523. Exceptions to discharge.**

(a) A discharge under section 727, 1141, [or 1328(b)], 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

■ Considering the claim of non-dischargeability based on § 523(a)(2), it should be noted at the outset that it is without dispute that the Debtor did not obtain any of the "money", "property", "services" or "extension of credit" from Christen. To overcome the obvious, it is the contention of Christen, however, that the Debtor, because of his failure to live up to his promise to obtain a release of his personal guaranty to Manna, he in fact obtained an "extension of credit" from Manna; that the promise to obtain a release was false because the Debtor knew that he had no intention to obtain a release or, in the alternative, that he knew very well as an attorney that he was unable to fulfill his promise.

The difficulty with the proposition urged by Christen should be evident when one analyzes the legal significance of the Debtor's promise to obtain a release of Christen's guaranty. First, as noted earlier, there is no evidence in this record to show

that this Debtor obtained any credit from Christen. This being the case, one would be hard pressed to conclude that Christen did indirectly extend credit to the Debtor by receiving a "loan" which he never granted to the Debtor to begin with. The fact that Manna resumed dealings with the Debtor selling merchandise on open account to the several corporations on the partial strength of Christen's guaranty granted long before Manna agreed to extend credit to Brewmasters and the other corporations is of no consequence. The fact of the matter is that Manna resumed to sell on credit to Brewmasters and its associates after it obtained the Debtor's personal guaranty and a cross-collateralization of the assets of all restaurants operated by the corporation controlled by the Debtor.

Based on the foregoing, it is clear that Christen failed to establish with the requisite degree of proof an indispensable element of a viable claim under § 523(a)(2)(A), not to mention a total lack of proof of any reliance by Christen on any statement or representation made by the Debtor.

■ In addition to the claim just discussed, Christen also alleged that the debt owed to him by the Debtor is nondischargeable based on the alleged breach of fiduciary duty by the Debtor pursuant to § 523(a)(4) of the Bankruptcy Code. The matter as plead by the Plaintiff alleged in support of this claim, that when Christen and others were sued by Manna, the Debtor informed Christen that he had been released on his personal guaranty, that he should not be concerned with the lawsuit because he would only be a witness and not a party to the litigation. It is also alleged by Christen that during the litigation, the Debtor filed numerous pleadings on Christen's behalf all without his knowledge and informed consent; that he had a valid defense to the lawsuit filed by Manna and also a potential crossclaim against the Debtor, all of which he was unable to raise because of the Debtor's action as his attorney, even though he had a definite established conflict of interest.

These are the factual allegations set forth in the Complaint in support of a claim that the amount of $225,000.00 which Christen payed by way of settlement to Manna should be declared to be nondischargeable. There is no question and this record is crystal clear that the Debtor acted as Christen's attorney and it needs no elaborate discussion to point out that an attorney occupies the position of a fiduciary vis a vis a client. It is equally without any question that the interest of the Debtor was to some extent adverse to the interest of Christen and, therefore, there might have been some ethical problems for the Debtor to appear in that lawsuit as counsel of record for Christen. There is not an iota of evidence on this record that the Debtor informed Christen that he had been released on his personal guaranty originally given to Manna; that he is only a witness in the lawsuit; don't have to worry about it and he will take care of and will represent him. Be as it may, the claim of Christen based on the alleged breach of fiduciary duty is not supported by this record for several reasons. First, there is nothing in the record which indicates that Smith either before the lawsuit filed by Manna breached any duty he owed to Christen as an attorney, nor during the litigation with Manna. More importantly, however, even if one accepts the proposition that Smith acted with lack of candor vis a vis Christen by not informing Christen that he did not obtain the release of the personal guaranty of Christen from Manna, it is clear that Christen knew that he was being sued and accepted services of Smith representing him in that lawsuit. There is nothing in this record that indicates that Smith has done anything in connection with the lawsuit that would rise to the level of breach of fiduciary duty of an attorney. More importantly, however, the voluntary settlement Christen made with Manna was a unilateral decision made by him to settle the lawsuit in spite of Smith's urging to fight the claim of Manna on the basis that they had meritorious defenses to the claim of Manna.

As noted earlier, the claim as set forth by Christen in Count III has been abandoned and this claim shall be dismissed with prejudice.

A separate final judgment will be entered in accordance with the foregoing.